

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

KCB:GP/KM  
F. #2024R00204

*271 Cadman Plaza East  
Brooklyn, New York 11201*

January 14, 2025

<u>By Email and ECF</u>

The Honorable Lara K. Eshkenazi  
United States Magistrate Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

   Re:  <u>United States v. Jesus David Barrios Garcia, et al.  
     Criminal Docket No. 25-11 (WFK) (JAM)</u>

Dear Judge Eshkenazi:

   The government submits this letter in advance of the defendants Jesus David Barrios Garcia and Enrique Gustavo Boada Yanez's initial appearance and detention hearing in the above captioned case. For the reasons set forth in detail below, because the defendants pose a danger to the community and are a flight risk, the government respectfully requests that the defendants be detained pending trial.

I. <u>Background</u>

  A. <u>The Defendants' Charged Conduct</u>

   On January 8, 2025, a grand jury sitting in the Eastern District of New York returned a seven-count indictment against the defendants Jesus David Barrios Garcia ("Barrios Garcia") and Enrique Gustavo Boada Yanez ("Boada Yanez") (together, the "defendants"), charging them with violations of Title 18, United States Code, Sections 933(a)(3) (firearms trafficking conspiracy), 933(a)(1) (trafficking in firearms), 922(a)(1)(A) (unlicensed firearms dealing), 922(g)(5)(A) (illegal alien in possession of firearms), and Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute one or more controlled substances) and 846 (conspiracy to distribute and possess with intent to distribute controlled substances). The charges relate to a series of controlled purchases conducted by federal law enforcement agents, during which the defendants personally numerous firearms and/or narcotics on three occasions in Queens.

   In particular, between November 2024 and December 2024, the defendants sold a total of approximately 500 grams of a substance known as "Tusi," which is a powdery

concoction that contained MDMA, ketamine, and methamphetamine. Photos below show the Tusi the defendants sold:

 

During this same time period, between November 2024 and December 2024, the defendants sold a total of 11 firearms, including three rifles, a pistol with a defaced serial number, high-capacity magazines, and various rounds of ammunition in calibers compatible with the sold firearms. Photos of the firearms the defendants sold are below:

 

2






All three of the narcotics and/or firearms sales the defendants made were captured in video and audio recordings during which the defendants can be seen making the sales. Furthermore, law enforcement agents observed the defendants at the scene of the sales.

B.      The Defendants' January 13, 2025 Arrests

The defendants were arrested on January 13, 2025 pursuant to arrest warrants issued in connection with the above-captioned indictment.

Barrios Garcia was arrested in New Jersey while inside in a vehicle. Although Barrios Garcia did not possess any contraband or weapon on his person at the time of the arrest, there were two additional occupants in the vehicle. One of those occupants had a loaded 9mm caliber pistol on him.

Boada Yanez was arrested in Queens shortly after making another sale of narcotics and firearms. In particular, Boada Yanez sold four pistols and one rifle, as well as approximately one kilogram of substance suspected to be Tusi.

C.      The Defendants' Criminal History and Immigration Status

The defendants have no criminal history within the United States. According to records maintained by the Department of Homeland Security, the defendants, who are

3

Venezuelan citizens, illegally entered the United States and have been unlawfully remaining in the United States without valid authorization or status.

II.     Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

In cases such as this, however, where there is probable cause to believe that the defendant has violated 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii), there is a statutory presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). Even if a defendant can overcome that presumption, the special risk of dangerousness posed by defendants who have committed such crimes "remains a factor to be considered among those weighed by the district court." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

The possibility of a significant sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson , 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022) ("The prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence.").

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000). In the pretrial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also Mercedes, 254 F.3d at 437 ("[The defendant] has twice been convicted of weapon possession—

one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

III.   Argument

As discussed below, the defendants should be detained pending trial because they fail to overcome the statutory presumption that no condition or combination of conditions will reasonably assure the appearance of the defendants as required and the safety of the community. See 18 U.S.C. § 3142(e)(3)(A). Additionally, the Section 3142(g) factors counsel heavily in favor of the defendants' detention.

　　A.   Nature and Circumstance of the Crimes

The nature and circumstances of the charged offenses are extremely serious. Driven by greed and complete disregard to the safety of the community, the defendants did not hesitate to sell guns and drugs, two of the most dangerous elements currently affecting New York City, including this District. Between November 2024 and December 2024, the defendants were able to acquire and sell approximately 500 grams of narcotics, which contained methamphetamine, a highly addictive controlled substance, and 11 firearms, as well as various rounds of ammunition. Most concerningly, among the 11 firearms the defendants trafficked were a pistol with a defaced serial number as well as three assault rifles with accompanying high-capacity magazines and ammunition rounds compatible with those rifles. Such high-powered and automatic rifles pose an even greater threat to the community—in the wrong hands, a single assault rifle can kill or gravely injure a large group of people in an incident, especially in a dense metropolitan area like New York City.

　　B.   Weight of the Evidence

The government's evidence is strong. As discussed above, all three incidents of the narcotics and/or firearms sales were captured on audio and video recordings that visibly show the defendants' faces during the sales, and each incident was monitored by law enforcement agents. The evidence also includes phone records and communications arranging the sales.

  C. <u>History and Characteristics of the Defendants</u>

  As described above, although the defendants have no criminal history, at least in the United States, the defendants have been remaining in the United States unlawfully and without status, thus further demonstrating their disregard for the law and risk of flight.

  D. <u>The Defendants Pose a Danger and a Risk of Flight</u>

  Given the seriousness of the conduct outlined above, the defendants' release would present a serious danger to the community. As the defendants demonstrated in the firearm sales discussed above, the defendants were able to obtain 11 firearms, including high powered assault rifles, in just a two-month span. For example, for a transaction in November 2024 alone, the defendants readily obtained and then sold six firearms, including two rifles, along with accompanying magazines and ammunition rounds. See <u>United States v. Smalls</u>, No. 20-CR-216 (LTS), 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020) (declining to overrule magistrate judge's pretrial detention determination that was based in part on "the general danger to the community posed by [the defendant's] apparently ready to access to firearms"). Furthermore, at the time of the January 13, 2025 arrest, Barrios Garcia was traveling with an individual who had a loaded firearm on him, and Boada Yanez engaged in another sale of firearms and narcotics shortly before getting arrested. If released, the defendants will continue to pose a danger to the community, including to potential witnesses in this case. This danger cannot be cured by any combination of release conditions.

  The defendants also face significant evidence of their criminal conduct and harsh penalties prescribed by law, giving them a substantial incentive to flee. "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." <u>United States v. Edwards</u>, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021). The government preliminarily estimates that Barrios Garcia's Guidelines range for the charged conduct is 78 to 97 months' imprisonment, 60 months of which is a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(viii). In addition, the government preliminarily estimates that Boada Yanez's Guidelines range for the charged conduct is 63–78 months' imprisonment, 60 months of which is a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(viii). The government's investigation is also ongoing, and the defendants may face additional charges that increase their sentencing exposure, including but not limited to firearms and narcotics related charges from the evidence recovered at or near the time of their January 13, 2025 arrests.

  The Second Circuit has held that the possibility of a severe sentence—including a sentence similar to the defendants face—can establish flight risk. See <u>United States v. Scali</u>, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); <u>see also</u> <u>United States v. Khusanov</u>, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."). In addition, the defendants pose an even greater risk of flight because they have significant ties to their home country of Venezuela, having illegally entered the United States. See <u>United States v. Zhang</u>, No. 22-CR-208, 2022 WL 17420740, at *3, <u>aff'd</u>, 55 F.4th 141 (2d Cir. 2022) (finding that the defendant's Chinese citizenship and significant ties to both China and Taiwan "enhance[d] his risk of flight"). When

considering the defendants' substantial incentive to flee and significant foreign ties together, the defendants unquestionably pose a real risk of flight.  See United States v. Boustani, 356 F. Supp. 3d 246, 255 (E.D.N.Y. 2019), aff'd, 2019 WL 2070656 (2d Cir. Mar. 7, 2019) ("This Court must look to the totality of the circumstances and of Defendant's characteristics, which ultimately demonstrate a risk of flight.").

IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court issue a permanent order of detention against the defendants pending trial.

Respectfully submitted,

CAROLYN POKORNY
Acting United States Attorney

By:   /s/
Gabriel Park
Kate Mathews
Assistant U.S. Attorneys
(718) 254-6099

cc: Clerk of Court (LKE)
Defense Counsel (via ECF and email)